UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEBRA L. BIELAT,

                    Plaintiff,             06-CV-06636

v.                                              **DECISION**

                                             **And ORDER**

JO ANNE BARNHART,
COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.


_____


## INTRODUCTION

Plaintiff, Debra Bielat ("Bielat" or "plaintiff") brings this action pursuant to the Social Security Act, codified at 42 U.S.C. § 405(g) and 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security, denying her application for Disability Insurance Benefits. Specifically, Bielat alleges that the decision of an Administrative Law Judge ("ALJ") who heard her case was erroneous because it was not supported by substantial evidence contained in the record, or was legally deficient.

The Commissioner moves for judgment on the pleadings on the grounds that the ALJ's decision was correct, was supported by substantial evidence, and was made in accordance with applicable law.  Bielat opposes the defendant's motion.

## BACKGROUND

On September 12, 2000 plaintiff Debra Bielat, a 41 year old with a Bachelor's degree in business administration, filed an

application for disability insurance benefits claiming that she had become unable to work as a production expediter/operator as of March 17, 2000 because of knee pain.  (Tr. 15-16, 104).  The application was denied initially and on reconsideration by the State Disability Determination Service.  (Tr. 15, 27-32, 34-36,168-75, 259-66). Plaintiff requested an administrative hearing which was held on December 5, 2002, at which hearing plaintiff was represented by an attorney.  (Tr. 15).

On the basis of the testimony and evidence submitted at the hearing, and the medical record, the ALJ found that Bielat suffered from severe impairments such as adjustment disorder and a right knee disorder, but not severe impairments such as lupus, Raynaud's phenomenon, and fibromyalgia.  The ALK also found that the plaintiff did not suffer from any condition or combination of conditions that were equivalent or more severe than any of the listed impairments identified in the Listing of Impairments, Appendix 1, Subpart P, Regulation No. 4.  (Tr. 15, 17, 21, 24). The ALJ held that although the plaintiff could not perform any past relevant work, she can perform other jobs that exist in significant numbers in the national economy and therefore is not disabled. (Tr. 25).  On April 20, 2004 Bielat's appeal of the ALJ's decision to the Appeals Council was denied, and on June 18, 2004, plaintiff filed this action.

DISCUSSION

I.   Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Disability Insurance Benefits. Additionally, the section directs that when considering such a claim, the court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.   Substantial evidence is defined as " such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  Section 405(g) thus limits the court's scope of review to determining whether or not the Commissioner's findings are supported by substantial evidence. See, Monqeur v. Heckler, 722 F.2d 1033, 1038 (2nd Cir. 1983) (finding that the reviewing court does not try a benefits case de novo).  The court is also authorized to review the legal standards employed by the Commissioner in evaluating the plaintiff's claim.

The court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F.Supp. 265, 267 (S.D.Tex.1983) (citation omitted). Defendant asserts that his decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.   Under Rule 12(c), judgment on the pleadings may be

granted where the material facts are undisputed and where judgment
on the merits is possible merely by considering the contents of the
pleadings.  <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639
(2nd Cir. 1988).  If, after a review of the pleadings, the court is
convinced that "the plaintiff can prove no set of facts in support
of [her] claim which would entitle [her] to relief," judgment on
the pleadings may be appropriate.  <u>See</u>, <u>Conley v. Gibson</u>, 355 U.S.
41, 45-46 (1957).  Because the court determines that the findings
of the Commissioner are supported by substantial evidence judgment
on the pleadings is hereby granted for the defendant.

> II.  <u>The Commissioner's decision to deny Plaintiff benefits
> was supported by substantial evidence on the record.</u>

The ALJ made the determination based on the evidence before
him that plaintiff did not suffer from a disability under the
Social Security Act.  A disability is defined by 42 U.S.C. § 423(d)
as the "inability to engage in any substantial gainful activity by
reason of any medically determinable physical or mental impairment
which can be expected to result in death or which has lasted or can
be expected to last for a continuous period of not less than
12 months…" 42 U.S.C. § 423(d) (1991).  The ALJ determined that
plaintiff was not engaged in substantial gainful activity; that
plaintiff's adjustment disorder and right knee disorder were severe
impairments and that her lupus, Raynaud's phenomenon, and
fibromyalgia were not severe impairments; that plaintiff's
conditions either individually or in combination with her other

impairments did not meet or equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; that plaintiff did not have the capacity to perform her past work, and that plaintiff retained the functional capacity to perform jobs that exist in significant numbers in the national economy including  light and sedentary work activities.  (Tr. 17, 21, 24-25).

The physical Residual Functional Capacity assessment by the ALJ is supported by substantial evidence in the record.  The ALJ determined that the plaintiff can occasionally lift and/or carry up to 10 pounds and perform unskilled work, provided that the plaintiff avoid prolonged standing, walking or sitting.  (Tr. 23). This Residual Functional Capacity assessment incorporates the conclusion of treating physician, Dr. James Fitzgerald, that the plaintiff "is totally disabled from any job which requires prolonged standing or sitting."  (Tr. 151, 326).  Consultative examiner, Dr. M. Vejendla examined the plaintiff on October 20, 2000 and concluded that the plaintiff should avoid prolonged walking and standing.  (Tr. 162).  Dr. Vejendla noted that the plaintiff was able to walk heel to toe, squat half way down and get on and off the examination table.  Id.  Although the plaintiff had significant pain in her right knee, Bielat stated that she could walk eight blocks without a cane, if she could rest in between. (Tr. 161).  Upon examination of Bielat's medical record on November 9, 2000 consultative examiner, Dr. Janis Dale, determined

that the plaintiff retained the ability to occasionally lift and/or carry 10 pounds, to stand and/or walk for at least 2 hours and sit for about 6 hours in an eight hour workday.  (Tr. 169).  On April 30, 2001 consultative examiner, Dr. Verna Yu, reviewed the plaintiff's medical record and concluded that Bielat retains the ability to occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for about 6 hours, sit for less than about six hours and has unlimited push and/or pull activity.  (Tr. 260).

The plaintiff underwent surgery on her right knee in 1980 due to internal derangement, on June 16, 2000 for right knee arthroscopic surgery, and on January 29, 2001 for a unicompartment right knee replacement, in which the medial femoro-tibial was replaced.[1]  (Tr. 176, 186-87, 252-53).  After the unicompartment knee replacement surgery the plaintiff underwent physical therapy from February 9, 2001 to March 9, 2001 at Brooks Memorial Hospital where Dr. Daye noted that Bielat met all of her physical therapy goals.  (Tr. 336-38).  After a follow-up examination on February 13, 2001, Dr. Fitzgerald opined that Bielat was "doing quite well",

---

[1]A unicompartmental knee replacement is a minimally invasive procedure to remove a damaged compartment of the knee joint and replace it with an implant.  Either the patellofemoral, the medial femoro-tibial or the lateral femoro-tibial is replaced. Kevin B. Freedman, M.D. & Bryn Mawr, P.A., *Knee Replacement-Partial*, MedlinePlus (July 1, 2005) <http://medlineplus.nlm.nih.gov/medlineplus/ency/article/007256.htm>.

has over 90 degrees of range in her right knee, and X-rays revealed good positioning of the right knee.  (Tr. 245).  On September 12, 2001 Dr. Fitzgerald opined that the plaintiff has "essentially full extension" in her right knee and that her knee was dry and stable.  (Tr. 151, 326).  On September 17, 2001 after an examination, Dr. Fitzgerald concluded that the plaintiff's right knee has over 120 degrees of motion, was stable and that she has no real point tenderness.  (Tr. 244).  At an examination on April 11, 2002, at Barnes Primary Care Associates, the plaintiff stated that her right knee was strong, that she has good flexibility, and no significant weakness.  (Tr. 273).

The plaintiff claims that the ALJ's finding that her lupus, fibromyalgia and Raynaud's phenomenon were not severe, is erroneous.  "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."  20 CFR § 404.1521(a).  Basic work activities means "the abilities and aptitudes necessary to do most jobs."  20 CFR § 404.1521(b).  "In evaluating a diagnosis of fibromyalgia an ALJ should consider whether the record contains a detailed clinical documentation of the claimant's symptoms and whether the physicians who diagnosed the claimant reported on the severity of the condition."  See Brunson v. Barnhart, 2002 WL 393078 (E.D.N.Y. 2002); citing Freeza v. Barnhart, 2002 WL 31102625 (E.D.N.Y. 2002).  In this case Rheumatologist, Dr. Ferhana Najam

has repeatedly noted improvements in the plaintiff's condition with medication.  At an examination on May 19, 2003 Dr. Najam noted that most of the plaintiff's symptoms are from fibromyalgia and that the plaintiff stated that her fibromyalgia was somewhat better on Flexeril.  (Tr. 369).  On February 4, 2003 the plaintiff stated that her sleep had improved with Amitriptyline to six hours a night and her hands had improved with Adalat.  (Tr. 367).  The plaintiff stated that she was taking less pain pills and was feeling a little better at an examination on March 18, 2003.  (Tr. 368).  On July 23, 2003 Bielat stated that Ultracet helped relieve her aches, pains and other symptoms from fibromyalgia.  (Tr. 376).

The plaintiff claims that the ALJ did not properly take into account Bielat's mental capacities in the ALJ's Residual Functioning Capacity assessment.  At a consultative psychiatric examination on March 4, 2003, psychologist Dr. Robert Hill, opined that Bielat's attention, concentration and recent and remote memory appeared generally intact.  (Tr. 349).  Dr. Hill opined that plaintiff can follow and understand simple directions and instructions, perform simple rote tasks, maintain concentration and attention, and relate adequately with others.  (Tr. 350).  Dr. Hill found that "her thought processes were coherent and goal-directed with no evidence of hallucinations, delusions, or paranoia in the evaluation setting."  (Tr. 349).  After evaluating her overall symptoms, he concluded "the claimant is able to carryout vocational

capacities." (Tr. 350). He concluded that she will need a medical followup evaluation and that intervention may be necessary if her depressed mood becomes more intense. (Tr. 351). Dr. Hill noted that Bielat "may benefit from some vocational training and rehabilitation." Id.

The plaintiff's claim that her medical impairments result in total disability is not supported by the substantial evidence in the record. Nor does the record substantiate her claim of significant mental issues which cause or contribute to a total disability. The extent of her combined medical and mental disability, as found by the ALJ, does not rise to the level required by the Social Security regulations to support a claim of total disability within the meaning of the Act. Accordingly, there is substantial evidence in the record to support the ALJ's finding that the plaintiff is not disabled.

CONCLUSION

For the reasons set forth above, I grant Defendant's motion for judgment on the pleadings, and dismiss plaintiff's complaint with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____<br>
MICHAEL A. TELESCA<br>
United States District Judge

Dated:   Rochester, New York<br>
January 16, 2007